UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

IN RE:                                                                                    CASE NO.

**LEVEL III TRADING PARTNERS, L.P.**                            **13-12120**
                                                                                            SECTION A
DEBTOR(S)                                                                          CHAPTER 11

## REASONS FOR DECISION

This matter came before the Court on the Second Amended Omnibus Objection to Claim Numbers 13, 14, 15, 16, 18, 19, 20, 21, 22, and 23 filed by Patrick C. Cotter, Litigation Trustee[1] and the Response filed by Level III Trading Partners, L.P. ("Level III").[2]

After a hearing on November 12, 2014, the parties filed briefs. Upon filing of the briefs,[3] the Court took the matter under advisement.

Level III is limited partnership that was formed under Alabama law in 2008 for the purpose of investing and growing capital. On August 2, 2013, a chapter 7 involuntary petition was filed naming Level III as debtor ("Petition Date").[4] Level III later agreed to become a voluntary debtor and convert to chapter 11.[5] Level III's confirmed plan ("Plan") provides for liquidation of its assets and the dissolution of the partnership after distribution to creditors.[6] A Litigation Trust was

---

[1] P-237. After the filing of the first Omnibus Objection to Claims, the Litigation Trustee withdrew his objection to claim 17 of Robert and Lori Schroeder. The Schroeders provided him with the information to support their claim, and they reached an agreement whereby the Schroeders have an allowed claim in the amount of $75,000. P-245.

[2] P-240.

[3] P-264, 266.

[4] P-1.

[5] P-11.

[6] P-180, ¶ 8.

established by the Plan, and it is the Litigation Trustee who filed the pending Second Amended Omnibus Objection to Claim Numbers 13, 14, 15, 16, 18, 19, 20, 21, 22, and 23.

The issues before the Court are (1) whether the Litigation Trustee has standing to object to claims; (2) whether the claimants withdrew from the partnership prior to the Petition Date; and (3) whether the claims are at parity with general unsecured creditors.

## I. Findings of Fact

Level III filed claims 14, 15, 16, 18, 19, 20, 21, 22, and 23 on behalf of those creditors.

Claim 13 was filed by John R. Acland for $150,000 and lists investment in Level III as its basis. No proof is attached.

Claim 14-1 of John and Amanda Madden for $131,263.72 listed "[u]npaid redemption of fund subscription" as the basis. On the hearing date, Level III amended it, and claim 14-2 is for the same amount and basis but adds a declaration by Bruce A. Gwyn, Level III's general partner, declaring that the amount of equity in the proof of claim is correct and that no distribution has been made.

Claim 15-1 of John McManus and Rhonda Rossi for $129,177.63 listed "[u]npaid redemption of fund subscription" as the basis. On the hearing date, Level III amended it, and claim 15-2 lists the basis as "Partnership Interest." The only proof attached is a declaration by Bruce A. Gwyn, Level III's general partner, declaring that the amount of equity in the proof of claim is correct and that no distribution has been made.

Claim 16-1 of Robert B. McManos for $3,343.64 listed "[u]npaid redemption of fund subscription" as the basis. On the hearing date, Level III amended it, and claim 16-2 is for the same amount and basis but adds a declaration by Bruce A. Gwyn, Level III's general partner, declaring that

2

the amount of equity in the proof of claim is correct and that no distribution has been made.

Claim 18-1 of Self Directed IRA FBO/Barry A. Breland IRA for $36,526.27 listed "[u]npaid redemption of fund subscription" as the basis. On the hearing date, Level III amended it, and claim 18-2 lists the basis as "Partnership Interest." The only proof attached is a declaration by Bruce A. Gwyn, Level III's general partner, declaring that the amount of equity in the proof of claim is correct and that no distribution has been made.

Claim 19-1 of The Christopher Dunworth McMahon Trust for $32,227.18 listed "[u]npaid redemption of fund subscription" as the basis. On the hearing date, Level III amended it, and claim 19-2 lists the basis as "Partnership Interest." The only proof attached is a declaration by Bruce A. Gwyn, Level III's general partner, declaring that the amount of equity in the proof of claim is correct and that no distribution has been made.

Claim 20-1 of William Gwyn for $62,490.71 listed "[u]npaid redemption of fund subscription" as the basis. On the hearing date, Level III amended it, and claim 20-2 lists the basis as "Partnership Interest." The only proof attached is a declaration by Bruce A. Gwyn, Level III's general partner, declaring that the amount of equity in the proof of claim is correct and that no distribution has been made.

Claim 21-1 of Anne Partridge IRA for $33,255.96 listed "[u]npaid redemption of fund subscription" as the basis. On the hearing date, Level III amended it, and claim 21-2 is for the same amount and basis but adds a declaration by Bruce A. Gwyn, Level III's general partner, declaring that the amount of equity in the proof of claim is correct and that no distribution has been made.

Claim 22-1 of Jennifer Jung for $19,213.71 listed "[u]npaid redemption of fund subscription" as the basis. On the hearing date, Level III amended it, and claim 22-2 is for the same amount and

basis but adds a declaration by Bruce A. Gwyn, Level III's general partner, declaring that the amount of equity in the proof of claim is correct and that no distribution has been made.

Claim 23-1 of James A. Ghio for $603.82 listed "[u]npaid redemption of fund subscription" as the basis. On the hearing date, Level III amended it, and claim 23-2 is for the same amount and basis but adds a declaration by Bruce A. Gwyn, Level III's general partner, declaring that the amount of equity in the proof of claim is correct and that no distribution has been made.

## II. Law and Analysis

### A. Standing

The Plan provides that the Litigation Trustee has "full right, power and authority to investigate and, if necessary, object to claims."[7] The agreement establishing the Litigation Trust also provides that a purpose of the Litigation Trust is to litigate objections to claims[8] and that the Litigation Trustee has authority to object to claims.[9] Therefore, the Court finds that the Litigation Trustee has standing to object to claims.

### B. Did the claimants withdraw prepetition?

The claims in question were timely filed on the official form, and under the Bankruptcy Code "constitute *prima facie* evidence of the validity and amount of the claim."[10] The party objecting to a claim, in this case the Litigation Trustee, must "present enough evidence to overcome the *prima*

---

[7] P-180, ¶ V. *See also* ¶ XI(F) which provides that the Litigation Trustee's powers and duties include "prosecution of objections to claims."

[8] P-180, exh. 1, article 2.02.

[9] *Id.* at article 4.03(a). *See also* article 4.04.

[10] F.R.B.P. 3001(f).

*facie* effect of the claim."[11] If he succeeds, the creditors must prove the validity of their claims.[12]

Claims 14-2, 16-2, 21-2, 22-2, and 23-2 list their basis as "[u]npaid fund subscription redemptions" due to withdrawal from Level IIII. The basis for the other claims at issue do not suggest prepetition withdrawal from the partnership.

The Litigation Trustee has not objected to the amounts of the claims, and he does not wish for them to be totally disallowed. Instead, the Litigation Trustee has objected to any treatment of the claims as for prepetition withdrawal from the partnership rather than regular equity claims.

There is no proof that the claimants withdrew from Level III prepetition. Neither the claimants nor Level III has produced any evidence of withdrawal.[13] Under Level III's partnership agreement, prior to withdrawing, a limited partner must provide not less than thirty (30) days written notice to the general partner.[14] No notices of withdrawal have been produced.

Bankruptcy Rule 3001(c)(2)(D) makes clear that a claim without supporting documentation is not automatically disallowed but may lose its *prima facie* validity.[15] The objecting party must rebut the presumption with evidence "sufficient to demonstrate a true dispute and must have probative force equal to the contents of the claim."[16] The Litigation Trustee is left with having to

---

[11] *Matter of O'Connor*, 153 F.3d 258, 260 (5th Cir. 1998) (citation omitted).

[12] *Id.*

[13] Only Level III, not the claimants, responded to the objection to their claims.

[14] P-266, exh. 1, article 3.06(a).

[15] 9 COLLIER ON BANKRUPTCY ¶ 3001.01[2] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.).

[16] *Id.* at 3001.09[2].

prove the negative, that these creditors did not withdraw prepetition. His Objection provides:

> The Trustee is in possession of a full audit of the debtor through the date of the involuntary petition, and all of the supporting documentation relied upon to produce the audit. Nowhere in the materials are any items that support the contention that the claim holders ... derive their claim from unpaid subscription redemptions ...[17]

The Court finds this sufficient to demonstrate a true dispute and rebut the validity of the nature of the claims. Thus, the burden of proof shifts to the claimants. Neither the claimants nor Level III has produced any evidence of withdrawal, so they have not met their burden.[18] Therefore, claims 13, 14, 15, 16, 18, 19, 20, 21, 22, and 23 will be allowed as equity holders.

**C. Payment of Claims**

Although the Court has ruled that there is no proof that the claimants withdrew from Level III prepetition, and claims 13, 14, 15, 16, 18, 19, 20, 21, 22, and 23 will be allowed as equity interests, in an abundance of caution, the Court will discuss treatment of claimants who withdrew from the partnership prepetition.

Level III is limited partnership that was formed under Alabama law in 2008. Therefore, Alabama law "governs relations among the partners of [the] limited partnership and between the partners and the limited partnership."[19]

Under the Alabama law in effect at the time Level III was formed, a partner had the power to dissociate from the partnership "at any time."[20] In 2010, Alabama changed that law, and a limited

---

[17] P-237, ¶ 7.

[18] Only Level III, not the claimants, responded to the objection to their claims.

[19] AL ST § 10A-9-1.06 (2010). Level III's partnership agreement also provides that it is governed by Alabama law. P-266, exh. 1, article 13.02.

[20] AL ST § 10A-8A-602(a) (1996).

6

partner no longer has the right to dissociate at will prior to termination of the limited partnership.[21]

However, the new law specifically provides that it does not apply to dissociation in limited partnerships that existed prior to January 1, 2010, "and a limited partner has the same right and power to dissociate from the limited partnership, with the same consequences, as existed immediately before January 1, 2010."[22]

> Under the prior law, upon withdrawal the withdrawing partners became:
>
> [E]ntitled to receive any distribution to which he or she is entitled under the partnership agreement and, if not otherwise provided in the agreement, he or she is entitled to receive, within a reasonable time after withdrawal, the fair value of his or her interest in the limited partnership as of the date of withdrawal based upon his or her right to share in distributions from the limited partnership.[23]

Prior Alabama law also provided the priority for paying creditors upon the winding up a limited partnership, including distributions to withdrawing partners:

> (1) To creditors (including partners who are creditors, to the extend permitted by Section 10-9B-107 or otherwise permitted by law), in satisfaction of liabilities of the limited partnership other than liabilities, even though enforceable by a partner as a creditor, under Section 10-9B-606 for distributions to partners under Section 10-9B-604:
>
> (2) Except as provided in the partnership agreement, to partners and former partners in satisfaction of liabilities for distributions under Section 10-9B-601 or Section 10-9B-604;[24] and
>
> (3) Except as provided in the partnership agreement, to partners first to the extent of

---

[21] AL ST § 10A-9-6.01 (2010).

[22] AL ST § 10A-9-12.06 (2010).

[23] AL ST § 10-9B-604 (1997). Level III's partnership agreement provides that a limited partner has the right to withdraw "his closing capital account at the end of each calendar quarter" after at least thirty (30) days written notice. P-266, exh. 1, article 3.06.

[24] AL ST § 10-9B-601 and 604 reference distributions to withdrawing partners.

7

the credit balances of their respective capital accounts, and secondly respecting their partnership interests, in the proportions in which the partners share in distributions.[25]

Because distributions for dissociation or withdrawal are found under Alabama code section 10-9B-604 and Level III's partnership agreement does not provide otherwise,[26] claims of creditors who withdrew prepetition must be paid after creditors of Level III but before current equity holders. Therefore, these claimants, as equity holders that did not formally withdraw are to be paid after full satisfaction of existing creditors and then withdrawing partners.[27]

**III. Conclusion**

Second Amended Omnibus Objection to Claim Numbers 13, 14, 15, 16, 18, 19, 20, 21, 22, and 23 is sustained. Claims 13, 14, 15, 16, 18, 19, 20, 21, 22, and 23 are allowed as equity holders. A separate Order will be entered in accord with these Reasons.

New Orleans, Louisiana, February 3, 2015.

Hon. Elizabeth W. Magner
U.S. Bankruptcy Judge

---

[25] AL ST § 10-9B-804 (1997).

[26] P-266, exh. 1, article 10.

[27] Similarly, withdrawing partners are subordinate to other creditor interests which must be satisfied prior to distributions on their claims.